UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JEFFREY J. THOMPKINS,      Case No. 02-61161-CIV-MORENO

    Plaintiff,     Magistrate Judge Garber

vs.

LIL' JOE RECORDS, INC., LIL' JOE WEIN
MUSIC, INC., JOSEPH WEINBERGER AND
JOHN DOE INDIVIDUALS AND
CORPORATIONS 1-5,

    Defendants.
_____/

## STATEMENT OF MATERIAL FACTS

1. Plaintiff, Jeffrey Thompkins, is a recording artist and songwriter professionally known as J. T. Money and Poison Clan and d/b/a Money Man Music ("Thompkins"). (Defendants' Appendix,[1] Tab 1, ¶10).

2. Defendant, Joseph Weinberger, was employed by Luther Campbell and Luke Records, Inc. from May 15, 1991 through December 27, 1994. (Defendants' Appendix, Tab 2 and Tab 3).

3. In addition to Luke Records, Inc., Luther Campbell owned and controlled other entities, including Pac Jam Music, Inc., Effect Records and Skyywalker Records (collectively, "Campbell/Luke").

4. Pac Jam Publishing, Inc. ("Pac Jam"), wholly owned by Luther Campbell, was incorporated in 1989. (Defendants' Appendix, Tab 6).

---

[1] Defendant has filed a separate Appendix to Defendants' Motion for Summary Judgment, incorporated herein by reference and cited herein as "Defendants' Appendix."

5. Thompkins entered into an exclusive recording agreement ("1989 Recording Agreement") with Effect Records, a division of Skyywalker Records, an entity owned or controlled by Luther Campbell. (Defendants' Appendix, Tab 4; Tab 5, p. 143, line 7; p. 146).

6. Thompkins acknowledged he entered this Agreement, also signed on his behalf by his mother, Brenda Thompkins. (Defendants' Appendix Tab 5; p. 146, lines 7-25; p. 147-148, line 5.)

7. Thompkins entered into an Addendum to the 1989 Recording Agreement on or about February, 1992 (Defendants' Appendix, Tab 7; Tab 5 p. 163, lines 18-25). Pursuant to this Addendum, Thompkins assigned and transferred "50% interest of the publishing interest," including the copyrights to works at issue[2] to Pac Jam.

8. Thompkins acknowledged he signed this Addendum (referred to as Exhibit 5) in his deposition. (Defendants' Appendix, Tab 5 p. 155, line 4- p. 156, line 19.)

9. On or about March 30, 1990, Thompkins (along with Patrick Watler) performing together as Poison Clan, entered into an Agreement ("March 30, 1990 Agreement") with Luther Campbell and Pac Jam and Skyywalker Records; collectively referred to as "Publisher" in the Agreement, for specific songs. Under the terms of the Agreement Thompkins assigned and transferred the specific works at issue (lyrics, music and title), as well as any copyrights and the right to secure copyrights in the works named. (Defendants' Appendix, Tab 8).

10. Thompkins acknowledged he signed the March 30, 1990 Agreement (referred to as Exhibit 4) in his deposition. (Defendants' Appendix, Tab 5 p. 153, line 19- p. 155, line 12.)

11. On February 2, 1992, Thompkins executed a series of Standard Songwriter Contracts ("1992 Songwriter Contracts") with Pac Jam for a number of songs. The 1992 Songwriter

---

[2] Weinberger uses the phrase "works at issue" to refer to those songs which Thompkins has identified as works for which he is asserting a claim in this litigation.

Contracts provide that 100% of the named works at issue, including all copyrights and/or the right to secure copyrights, were assigned and transferred to Campbell/Luke (Defendants' Appendix Tabs 9 through 21).

12. Thompkins entered an additional Songwriter Contract ("1993 Songwriter Contract") with Pac Jam on February 2, 1993. The 1993 Songwriter Contract is identical to the 1992 Songwriter Contracts, except for the songs listed (Defendants' Appendix, Tab 22).

13. Thompkins acknowledged his signature and initials on all of the Songwriter Contracts (referred to as Exhibits 9, 10A-10K and 11) in his deposition. (Defendants' Appendix, Tab 5 p. 186 – p. 190, line 14; p. 191, lines 20-24; p. 199, lines 9-24; p. 207, lines 7-18).

14. RuffTown Productions, acting as agent for Thompkins, who was performing under the name "Poison Clan,"[3] entered into an exclusive recording agreement with Luke Records on February 21, 1995 ("1995 Recording Agreement") (Defendants' Appendix, Tab 23). Thompkins acknowledged his signature on the 1995 Recording Agreement (referred to as Exhibit 6) in his deposition. (Defendants' Appendix, Tab 5 p. 157, line 6- p. 158, line 18.)

15. On March 2, 1995, an Amendment to the 1995 Recording Agreement was entered into correcting an error naming Watler as a member of Poison Clan. Thompkins acknowledged his signature on this Amendment (referred to as Exhibit 7) in his deposition. (Defendants' Appendix, Tab 24; Tab 5 p. 171, line 23- p. 173, line 23.)

16. Thompkins is not aware of any documents from any source other than the "Agreements" (with the Campbell/Luke entities) which show his ownership of the copyrights and works at issue in this case. (Defendants' Appendix, Tab 5 p. 78, lines 12-20).

---

[3] Thompkins testified that he was RuffTown Productions, just like he is J. T. Money, LLC (Defendants' Appendix, Tab 5 p. 170, lines 13-18).

3

Case No. 02-61161-CIV-MORENO
Magistrate Judge Garber

17. Thompkins was aware that the liner notes on CD's, cassettes or LP's of his work distributed by Campbell/Luke showed the copyrights owned by Campbell/Luke or Pac Jam, one of the Campbell/Luke entities. Thompkins knew he was not named as copyright holder on these works before the albums were distributed to the public. (Defendants' Appendix Tab 5 p. 178, line 5 through p. 180, line 9).

18. Mr. Weinberger was not employed by Campbell/Luke in either May, 1989 or in 1995 when Thompkins entered into the 1989 and 1995 Recording Agreements with Campbell/Luke. (Defendants' Appendix, Tabs 2 and 3).

19. Thompkins does not recall any specific conversation with Mr. Weinberger regarding the Songwriter Contracts (Defendants' Appendix Tab 5 p. 193, lines 2-7).

20. Luke Records, Inc. was the subject of an involuntary Chapter 7 bankruptcy petition filed on March 28, 1995. (Defendants' Appendix, Tab 45).

21. On June 12, 1995, Luther Campbell filed a Voluntary Chapter 11 bankruptcy petition (Defendants' Appendix, Tabs 26 and 43), and on June 14, 1995, the Bankruptcy Court entered an Order converting the involuntary Chapter 7 bankruptcy of Luke Records, Inc. to a voluntary Chapter 11 bankruptcy case. (Defendants' Appendix, Tabs 27 and 45).

22. The Bankruptcy Court jointly administered the Luther Campbell bankruptcy (95-12785-BKC-RAM) and the Luke Records, Inc. bankruptcy (95-11447-BKC-RAM). (Defendants' Appendix, Tabs 32, 43 and 45).

23. Thompkins filed a Proof of Claim in the Luke Records bankruptcy (Defendants' Appendix, Tab 31) on November 22, 1995, well after the two bankruptcy proceedings had begun to be jointly administered.

4

Case No. 02-61161-CIV-MORENO
Magistrate Judge Garber

24. After he filed his Proof of Claim, Thompkins was served with pleadings and Orders regarding creditors claims in the Luke Records, Inc. bankruptcy proceedings. (*e.g.* Defendants' Appendix 36).

25. Thompkins identified the Proof of Claim and acknowledged his handwriting and signature on the document (referred to as Exhibit 17) in his deposition (Defendants' Appendix, Tab 5, p. 243, lines 19-25; p. 244, lines 1-21; p. 245, lines 20-25; p. 246, lines 1-3).

26. Thompkins further identified the attachment to his Proof of Claim as a listing of the works at issue. (Defendants' Appendix, Tab 5 p. 247, lines 19-25; p. 248, lines 1-10).

27. On February 12, 1996, Objections to Claims in the joint bankruptcy were filed by Jonathan Winer, co-counsel for Luke Records, and counsel for the official Unsecured Creditors Committee. (Defendants' Appendix, Tab 33).

28. The Certificate of Service for the Objections is signed by Mr. Winer and the service list indicates that Thompkins was served with this document. (Defendants' Appendix, Tab 33).

29. Thompkins admitted his name and correct address (where he resided for 10 to 12 years and where he continues to receive mail) are shown on the service list to the Objections.[4] (Defendants' Appendix, Tab 5 p. 265, lines 7-21.)

30. On the front page of the Objections in bold type is a notice that specific claims are being objected to and that the notified parties have 23 days from the date of the objection to explain why the claim should be allowed. On page 7, item number 79, Thompkins' claim is listed as "pursuant to executory contract." (Defendants' Appendix, Tab 33)

---

[4] The Objections were identified as Exhibit 21 in Thompkins' deposition.

5

31. Thompkins filed nothing in response to this notice, despite the fact that he was aware that the Objections referred to his claims and that "they were trying [in the bankruptcy] to get us out of the way." (Defendants' Appendix, Tab 5 p. 265, line 7 – p. 266, line 22).

32. On March 21, 1996, the Bankruptcy Court entered an Order on Debtor-in-Possession's Motion to Assume and Assign Executory Contracts. The Poison Clan contracts are identified as executory contracts in this Motion. ("Defendants' Appendix, Tab 28).

33. The Court's March 21, 1996 Order provides that the Motion to Assume and Assign Executory Contracts is withdrawn. (Defendants' Appendix, Tab 28, ¶1).

34. On February 26, 1996, the Joint Plan of Reorganization ("Joint Plan") was filed in the Campbell/Luke bankruptcy proceedings (Defendants' Appendix, Tab 32).

35. The Joint Plan (later approved by the Court) provided for the conveyance of assets to Joseph Weinberger/Lil' Joe Records, Inc. Among the listed assets are all copyrights and/or publishing interests held by Luther Campbell, Luke Records, Inc. or Pac Jam.[5] (See Defendants' Appendix, Tab 32).

36. The Joint Plan provides that the Committee "believes there is no viable alternative to the proposed Plan" except a Chapter 7 liquidation and that the Plan would realize significantly more recovery than liquidation. (Defendants' Appendix, Tab 32 at X.).

37. The Plan also specifically provides that the purchase of assets by Weinberger "obviates any need for the Committee or the Liquidating Trustees to pursue any further investigations" regarding the pre-petition transfer made to Weinberger, which the Examiner in his 1995 avoidance analysis, indicated may have been a preference. (Tab 32 at IX. E.)

---

[5] Certain compositions were excluded. None of the excluded compositions were by Thompkins.

38. The Bankruptcy Court entered its Order Confirming Joint Plan of Reorganization ("Confirming Order") on March 26, 1996. (Defendants' Appendix, Tab 35).

39. In the Confirmation Order, the Court specifically found that:

A. The solicitation of acceptances from holders of claims and interests has been made in the manner required by the Bankruptcy Code (Defendants' Appendix, Tab 32 at A.);

B. The Sale of Debtors' assets to Joseph Weinberger and Lil' Joe Records is in the best interest of the Debtors' estates (Defendants' Appendix, Tab 35 at B.);

C. Joseph Weinberger/Lil' Joe Records is an independent third-party purchaser (Tab 35 at B.);

D. The Letter of Intent was negotiated in good faith (Defendants' Appendix, Tab 35 at B.);

E. Weinberger is a "good faith purchaser" as that term is used in 11 U.S.C. §363(m) and that as such is entitled to "all of the protection of a good faith purchaser pursuant thereto." (Defendants' Appendix, Tab 35 at D.);

F. "All the assets to be transferred under the Plan (Defendants' Appendix, Tab 32), the Letter of Intent or this Order . . . be transferred free and clear of any interest in such property of an entity other than the Debtors." (Defendants' Appendix, Tab 35 at 26).; and

G. All executory contracts (with certain exceptions not pertinent to Thompkins) were rejected and that "parties to such rejected contracts . . . are directed to file proofs of claim for rejection damages within thirty days from the date hereof, or be forever barred from asserting such claims." (Defendants' Appendix, Tab 35 at ¶23).

40. Thompkins filed no proof of claim pursuant to the Confirmation Order.

41. On March 30, 1996 and April 4, 1996, the Court entered Orders Setting Bar Date for Rejection of Claims Arising from Rejected Executory Contracts ("Bar Date Orders") in *In Re: Luther Campbell* (95-12785) and *In Re: Luke Records* (95-11447) respectively. (Defendants' Appendix, Tabs 29 and 36).

42. The Bar Date Orders provide that "any claims not timely filed shall be deemed waived. . . " Exhibit A to the April 4, 1996 Order lists the Poison Clan executory contract. (Defendants' Appendix, Tabs 29; Tab 36 at ¶4).

43. Thompkins filed no claim pursuant to either of the Bar Date Orders.

44. The General Release and Hold Harmless and Indemnification Agreement between Defendants' and The Liquidating Trustees of the Luther Campbell bankruptcy estate releases Defendants from any and all actions, including preference actions and/or avoidance actions under The Bankruptcy Code. (Defendants' Appendix, Tab 30).

45. The General Release and Hold Harmless and Indemnification Agreement between Defendants and Frank Terzo, Liquidating Trustee of the Luke Records bankruptcy estate releases Defendants from any and all actions including preference actions and/or avoidance actions under The Bankruptcy Code. (Defendants' Appendix, Tab 42).

46. In its Confirmation Order, the Court found that the "releases provided for in the Plan" were "reasonable" and approved the releases. This Order thereby approves the General Releases. (Defendants' Appendix, Tab 35).

47. Campbell/Luke assigned certain of its copyrights, including Thompkins' works at issue, to Defendants by Copyright Assignment dated April 8, 1996. (Defendants' Appendix, Tab 38).

Case No. 02-61161-CIV-MORENO
Magistrate Judge Garber

48. Campbell/Luke ("Seller") executed Bills of Sale for the transfer of 100% of the works at issue, including copyrights, to Lil' Joe Records. (Defendants' Appendix Tabs 39 and 40).

49. In 1995, Thompkins knew he had not been paid amounts he claimed due him by Campbell/Luke (Tab 5, p. 37, lines 9-25; p. 38, lines 1-8).

50. In fact, Thompkins was aware as early as 1992 and certainly before the bankruptcy, that Campbell/Luke might owe him money. (Tab 5, p. 114, lines 21-25; p. 115, lines 1-15).

51. Thompkins testified that as early as 1991 he knew he was "getting stuck" and that he might need the services of an attorney. (Defendants' Appendix, Tab 5, p. 223, lines 17-25).

52. Thompkins original Complaint in this case was filed on March 5, 2002. (Defendants' Appendix, Tab 44).

HINSHAW & CULBERTSON

By _____
Maureen G. Pearcy
Florida Bar No. 0057932
David Levitt
Illinois Bar No. 3125349
Admitted *pro hac vice*
Co-Counsel for Lil' Joe Records, Inc.,
Lil' Joe Wein Music, Inc. and Joseph Weinberger
P. O. Box 569009
9155 South Dadeland Blvd
Suite 1600
Miami, FL 33256-9009
Telephone: 305-358-7747
Facsimile: 305-577-1063

Case No. 02-61161-CIV-MORENO
Magistrate Judge Garber

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail September 26, 2003, to: John C. Carey, Esq., Stroock & Stroock & Lavan LLP, Co-counsel for Plaintiff/Counterclaim-Defendant Jeffrey J. Thompkins, 200 South Biscayne Boulevard, Suite 3160, Miami, Florida 33131; Philip M. Walden, Esq., Leon S. Jones, Esq., Jones & Walden, Co-counsel for Plaintiff/Counterclaim-Defendant, Jeffrey J. Thompkins, LLC, 83 Walton Street, Atlanta, Georgia 30303; Terry D. Jackson, Esq., Terry D. Jackson, P.C., Co-counsel for Plaintiff/Counterclaim-Defendant, Jeffrey J. Thompkins, 600 Edgewood Avenue, Atlanta, Georgia 30303; and Kevin J. O'Grady, Ruden, McClosky, Smith, Schuster & Russell, P.A., Co-counsel for Lil' Joe Records, Inc., Lil' Joe Wein Music, Inc. and Joseph Weinberger, 200 East Broward Boulevard, Fort Lauderdale, Florida 33302.

_____
MAUREEN G. PEARCY